# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANGELA KELLY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-02495-PX |
| GIANT OF MARYLAND LLC, | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

Pending before the Court in this employment discrimination action are Plaintiff's Motion for Appointment of Counsel (ECF No. 11) and Motion for Leave to File a Surreply (ECF No. 21), as well as Defendant's Motion to Dismiss (ECF No. 14). The motions are fully briefed and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court GRANTS Defendant's motion and DENIES Plaintiff's motions.

## I. Background[1]

### A. Factual Background

Pro se Plaintiff Angela Kelly ("Kelly") has been employed by Defendant Giant of Maryland LLC ("Giant") since 1994. ECF No. 1 at 9. From 2011 to 2013, Kelly worked in Giant's deli at the Germantown, Maryland location under the direct supervision of Deli Manager Tom George ("George"). *Id.* Kelly, a Caucasian woman, asserts that George gave "preferential treatment to both [H]ispanic and male employees regarding shift scheduling, position openings, and work assignments" and "frequently harassed [Kelly] and other females expressing anger and hostility." *Id.*

---

[1] For purposes of this Opinion, the Court accepts the facts pleaded in the Complaint as true and construes them most favorably to Plaintiff. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

Kelly avers that George gave away one of her early shifts to Victor Herrera, despite Kelly's seniority, and that George "falsely accused" Kelly of not performing her assigned duties when she complained of the scheduling switch. *Id.* Kelly also asserts that, beginning in March 2012, George assigned "easier kitchen duties" to male and Hispanic employees, while assigning female employees "more difficult customer/counter duties." *Id.* When Kelly brought these issues to the attention of the store manager Keith McDaniels ("McDaniels") in July 2012, McDaniels relayed to Kelly that George found Kelly not dependable and reported that Kelly "took too many bathroom breaks." *Id.*

Beginning in September 2012, George re-assigned all of Kelly's morning shifts to "male and [n]on-Caucasian employees," leaving her with only night shifts as her scheduled work. *Id.* George also yelled at her and other female employees on multiple occasions, and on April 2, 2013, "threw trash cans around [her] in an aggressive manner." *Id.* About a month later, on May 3, 2013, Kelly "sent a letter to Giant" in which she accused George of discriminating against her on "the basis of sex and thereby creating a hostile work environment." *Id.* at 9–10.

On February 14, 2014, McDaniels informed Kelly that she was being transferred to a Giant in the District of Columbia "outside of [her] district" because she had the "least amount of seniority" among full-time deli employees. *Id.* at 10. Kelly details a variety of incidents after her transfer to the D.C. store, between June 2014 and September 2015, in which Kelly believes she was treated less favorably than African American employees by several different managers and was forced "to work in a very hostile work environment." *Id.* at 10–11. Specifically, Kelly points to her receiving a disciplinary warning in June 2014 for charging her cell phone, while other "workers who were African American" did not receive the same warning. *Id.* at 10. In early 2015, Kelly was transferred to a store in Oxon Hill, "over an hour from where [she] lived."

*Id.* at 11. Kelly recounts several other disciplinary warnings she received for taking breaks and not completing assigned tasks at this store. *Id.* After notifying her union representative of the "hostile work environment" in September 2015, Kelly was transferred to the Silver Spring store in Montgomery County. *Id.*

### B. Procedural History

On May 13, 2013, Kelly filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging sex and race-based discrimination and retaliation. ECF No. 14-2 at 2. Kelly described in the Charge facts from September 2011 to May 2013 and also checked a box noting a "continuing action." *Id.* at 2–4. Kelly amended her Charge on August 14, 2013, adding that George failed to process Kelly's schedule change request properly. *Id.* at 5, 7. On April 1, 2014, Kelly again filed an amendment to her Charge ("Amended Charge"), to include an allegation regarding her February 2014 transfer. *Id.* at 12. The EEOC issued a determination letter on December 11, 2017, "finding reasonable cause that unlawful employment practices have occurred." ECF No. 1-2 at 1. After conciliation efforts failed, the EEOC determined it would not bring a suit against Giant and issued a Notice of Right to Sue letter to Kelly on May 25, 2018. *Id.* at 4.

On August 14, 2018, Kelly filed this action against Giant, alleging sex and race-based discrimination, retaliation, and harassment in violation of Title VII of the Civil Rights Act of 1964. *See* ECF No. 1 at 9–12. Giant moved to dismiss the Complaint in its entirety, arguing Kelly has failed to exhaust administrative remedies as to certain claims and has failed to state a claim for relief with respect to the remaining claims. *See* ECF No. 14-1 at 1. Kelly has moved for court appointed pro bono counsel. *See* ECF No. 11. The Court addresses each motion in turn.

## II. Motion for Appointment of Counsel

The Court first considers Kelly's request for the appointment of counsel. *See* ECF No. 11. 42 U.S.C. § 2000e-5(f)(1) provides the avenue for appointment of counsel in a Title VII case under "such circumstances as the court may deem just." *Id.* Whether a civil case warrants the appointment of counsel depends on the characteristics of the claim and the litigant. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989). When an unrepresented litigant maintains a "colorable claim but lacks the capacity to present it," the Court should appoint counsel. *See Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978). In making this determination, the Court should consider the plaintiff's financial ability to retain an attorney, the efforts of the plaintiff to retain counsel, and the merits of the case. *Scott v. Health Net Fed. Servs., LLC*, 463 F. App'x 206, 209 (4th Cir. 2012).

In 2013, Kelly had retained counsel to assist her with the EEOC administrative process. ECF No. 11 at 1. Kelly could not afford counsel's quoted rate to pursue her case in federal court and efforts to find new counsel were unavailing. *Id.* Kelly, however, has submitted several pro se filings and appears capable of pursuing her claims. Furthermore, as discussed below, Kelly's claims fail as a matter of law. Therefore, the Court declines to appoint counsel pursuant to 42 U.S.C. § 2000e-5(f)(1).

## III. Motion to Dismiss

### A. Standard of Review

Giant brings this motion to dismiss in part under Federal Rule of Civil Procedure 12(b)(1), challenging the Court's subject matter jurisdiction based on Kelly's alleged failure to exhaust administrative remedies. ECF No. 14-1 at 7. While this Court has reviewed such claims

under Rule 12(b)(1) in the past, *Young v. Montgomery Cty., Md.*, No. 18-002054-PX, 2019 WL 1596992, at *2 (D. Md. Apr. 15, 2019), the United States Supreme Court recently held the Title VII charge-filing requirement is a non-jurisdictional, "mandatory claim-processing rule." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019) (abrogating *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th. Cir. 2009)). The decision in *Fort Bend* suggests that exhaustion is properly challenged under Federal Rule of Civil Procedure 12(b)(6). However, even if Giant brings a timely "facial challenge" to subject matter jurisdiction, this affords a plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). Accordingly, *Fort Bend* does not alter the standard of review in this case.

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

A pro se litigant's complaint must be construed liberally to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Eccleston v. Prince George's Cty.*, No. DKC 15-3871, 2017 WL 430384, at *1 (D. Md. Feb. 1, 2017) ("Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers.") (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nonetheless, liberal construction

does not mean that a court must ignore a clear failure in the pleadings to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Nor should the court rewrite a complaint to ensure that it survives a motion to dismiss. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### B. Discussion

#### i. Exhaustion of Claims

Giant asserts that Kelly has failed to exhaust administrative remedies with respect to the allegations taking place after her February 2014 transfer, as this conduct exceeds the scope of Kelly's Amended Charge.[2] Although the Amended Charge ends with the February 2014 transfer, Kelly's Complaint includes further allegations from June 2014 to September 2015, against a number of managers for conduct primarily at the D.C. and Oxon Hill stores. ECF No. 1 at 10–11. Giant points out that the Amended Charge limits Kelly's claims to "conduct by George and others at the Germantown store, beginning in 2011 and continuing up to and including Plaintiff's transfer out of the store in February 2014, at which time Plaintiff no longer worked with or was supervised by any of the alleged bad actors and/or decision-makers." ECF No. 14-1 at 19.

Kelly responds that she "notified the EEOC investigator . . . when these adverse employment actions occurred" and that she was told "the new claims of discrimination" arising out of conduct at the D.C. and Oxon Hill stores after February 2014 would "be added to the existing charge." ECF No. 18 at 27. Kelly attached to her Response in Opposition a letter from

---

[2] Although Kelly did not attach her EOOC Charge or amended Charges to the Complaint, Giant provided them as exhibits to its Motion to Dismiss. *See* ECF No. 14-2. The Court may consider these documents without converting the Motion to Dismiss into one for summary judgment. *See Rafter v. Great Atl. & Pac. Tea Co.*, No. ELH-12-3580, 2013 WL 4400496, at *6 (D. Md. Aug. 15, 2013) (taking judicial notice of an EEOC charge and right to sue letter).

her attorney to the EEOC, purporting to be a "Third Amendment" to her charges, bearing the same date as her Opposition. *See* ECF No. 18-1. This letter added only one new allegation—that Kelly was issued a written warning for charging her cell phone on June 7, 2014. *Id.* at 3.

Before a plaintiff may pursue discrimination claims in federal court, she must file a formal charge with the EEOC or appropriate local agency. 42 U.S.C § 2000e-5(e)(1); *see also Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *Fort Bend Cty.*, 139 S. Ct. at 1851 ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one."). The initial charge circumscribes the claims that plaintiff may pursue in this Court. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."). Courts are to "strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012).

The Court begins by recognizing that the exhaustion inquiry focuses, as it must, on Kelly's formal Amended Charge. Kelly's additional correspondence attached to her Opposition does not, as a matter of law, constitute a subsequent amendment. "The Fourth Circuit . . . has adopted a rigid rule that letters, emails, and other submissions cannot be deemed to have effected an amendment of the Charge; only inclusion of additional allegations on the face of the Charge form will count." *See Maddox-Nichols v. S. Md. Hosp., Inc.*, TDC-14-0243, 2014 WL 6609313, at *5 (D. Md. Nov. 19, 2014) (citing *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401 (4th Cir. 2013)). Moreover, claims are outside of the scope of the EEOC charge where a plaintiff's

7

"administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Sydnor*, 681 F.3d at 593 (citation omitted).

Looking to the Amended Charge, Kelly has not properly exhausted the allegations concerning conduct after her February 14, 2014 transfer. The Amended Charge centers exclusively on George and McDaniels, the events occurring at the Germantown store between 2011 and Kelly's transfer, and alleged preferential treatment for male and Hispanic employees. *See* ECF No. 14-2 at 10–11. The Complaint, in contrast, includes discrimination allegations concerning the D.C. and Oxon Hill stores between June 2014 and September 2015 from at least eight different supervisors, none of which Kelly included in the Amended Charge. ECF No. 1 at 11–12. Further, the 2014–15 conduct, according to Kelly, arises from Giant's alleged preferential treatment for African American employees and details an array of managerial misconduct from refusals to allow Kelly to charge her cell phone, various disciplinary notices, and several comments regarding Kelly's "poor work performance." *Id.* at 12. Kelly has not included any of these facts and circumstances in any formal charge before the EEOC. Accordingly, these claims must be dismissed for failure to exhaust administrative remedies.

Kelly argues, however, that the challenged claims are part of an ongoing course of conduct and thus are sufficiently related to overcome Giant's challenge. The Court disagrees. The post-transfer claims would not "be expected to follow from a reasonable administrative investigation." *Smith*, 202 F.3d at 247. Although Kelly marked the "continuing action" box on her initial charge form in 2013, this alone does not automatically allow consideration of facts and allegations not raised in the formal charge. *See Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 439 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014). Kelly included no facts or events in the Amended Charge that would allow the EEOC's investigation to discover claims

8

that arise from alleged misconduct first occurring four months after her transfer, with an entirely new set of actors, concerning a different kind of discrimination. *See Johnson v. SecTek, Inc.*, No. ELH-13-3798, 2015 WL 502963, at *6 (D. Md. Feb. 4, 2015) ("[T]he Fourth Circuit has repeatedly determined that a plaintiff who alleges in a suit a basis or form of discrimination that differs from what was alleged in an EEOC charge has failed to exhaust that particular claim."). Because Kelly has not exhausted remedies for any post-transfer allegations, the Court considers only the facts leading up to and including Kelly's transfer on February 14, 2014 in deciding Giant's motion for failure to state a claim.

### ii. Failure to State a Claim

Giant contends that Kelly's sex and race-based discrimination, hostile work environment, and retaliation claims fail under Rule 12(b)(6). Giant, more particularly, argues that each claim should be dismissed because Kelly fails to plead facts establishing a prima facie case. Although Giant is correct that Kelly must prove at trial her prima facie case as first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the prima facie case "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Put more precisely, a plaintiff need not plead a prima facie case to survive a motion to dismiss. *See id.* at 515; *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Rather, the complaint must allege facts that "raise a right to relief above the speculative level." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). Nevertheless, the elements of a prima facie case provide helpful guidance when reviewing "the adequacy of the allegations." *Niner v. Garrett Cty. Pub. Works,* No. ELH-17-2948, 2018 WL 3869748, at *16 (D. Md. Aug. 15, 2018). With this standard in mind, the Court considers each claim separately.

9

1. **Disparate Treatment**

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Workplace discrimination typically involves either disparate treatment or a hostile work environment. Kelly maintains that she was subject to both forms of discrimination. *See* ECF No. 1 at 9–10.

As to her disparate treatment claim, Kelly must aver facts by which the Court could infer plausibly (1) Kelly's membership in a protected class; (2) her satisfactory job performance; (3) that she was subject to an adverse employment action taken against plaintiff; and (4) that others outside the protected class with similar job functions were treated more favorably. *Coleman*, 626 F.3d at 190. At the motion to dismiss stage, the Complaint must, at a minimum, "include sufficient factual allegations to show plausibly that the plaintiff suffered an adverse employment action because of her race" or sex. *Cobb v. Towson Univ.*, No. ELH-14-02090, 2015 WL 3654562, at *7 (D. Md. June 10, 2015).

Giant's motion focuses primarily on whether Kelly has sufficiently alleged an adverse employment action. ECF No. 14-1 at 9–10; *see Cobb*, 2015 WL 3654562, at *8. To constitute an adverse employment action, the employer's "conduct must materially alter the terms, conditions, or benefits of employment." *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003). Courts generally focus on whether the plaintiff alleges "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). "Although something less than an 'ultimate employment decision' may constitute an adverse employment action, Title VII does not remedy everything that makes an employee unhappy." *Jeffers*, 264 F. Supp. 2d at 329.

The Complaint recounts a variety of decisions that George and McDaniels made regarding Kelly's work terms. Construing those actions most favorably to Kelly and taken as a whole, they simply do not constitute an "adverse employment action." According to the Complaint, George "took away all [her] morning shifts" by September 2012, scheduling her to instead work several nights a week. ECF No. 1 at 9. Kelly has not explained, however, how this shift-change materially altered the terms and conditions of her employment. *See White v. City of Annapolis (MD)*, No. JFM-13-1330, 2015 WL 5009853, at *16 (D. Md. Aug. 21, 2015), *aff'd sub nom. White v. City of Annapolis, Md.*, 639 F. App'x 209 (4th Cir. 2016) (scheduling plaintiff to work night shifts not an adverse employment action). The Complaint does not aver any loss in benefits, pay, seniority, or other work terms amounting to an adverse action. Kelly responds only that her seniority entitled her to shift preference but does not provide any basis to support that denial of her preferred shift amounts to an adverse action.[3] ECF No. 18 at 17.

Kelly's next contention—that George assigned her "more difficult customer/counter duties" over the "easier kitchen duties" assigned to male and Hispanic workers—similarly fails. ECF No. 1 at 9. Kelly provides no detail as to why certain duties were more or less "difficult." Accordingly, even when viewing the allegations most favorably to Kelly, "[t]he mere fact that a new job assignment is less appealing to the employee" does not amount to an adverse employment action absent a showing that "the reassignment had some significant detrimental effect" on the plaintiff. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (citation omitted). "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion," change in job position "does not constitute an adverse employment

---

[3] The Court's analysis is limited to the facts of the Complaint. The Court does not consider any additional facts Kelly included in her Opposition. *See Cobb*, 2015 WL 3654562, at *8 ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal citation omitted).

11

action even if the new job does cause some modest stress not present in the old position." *Id.* The Complaint fails to plead any facts which allow this Court to infer that Kelly was detrimentally affected in some way beyond her displeasure with the assigned job tasks.

Finally, the Complaint contends that Kelly's 2014 transfer to the D.C. store affected her adversely. But the Court cannot find any support, based on the facts alleged, that this transfer amounted to a material change in the terms and conditions of her employment. Kelly complains that the transfer was prompted by false reasoning that she was the least senior among the deli employees. ECF No. 1 at 10. But Kelly has not alleged how this lateral transfer to another Giant deli resulted in "less responsibility or opportunity for promotion, or any salary implications." *Jackson v. Balt. Police Dep't*, No. WDQ-11-3569, 2013 WL 1121412, at *6 (D. Md. Mar. 15, 2013) (police officer's transfer to a new district and detail not sufficient adverse employment action). "An action that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of her employment, is not an adverse employment action." *Spriggs v. Pub. Serv. Comm'n of Md.*, 197 F. Supp. 2d 388, 393 (D. Md. 2002).[4] Accordingly, because the averred facts, accepted as true and most favorably to Kelly, do not give rise to the plausible inference that Kelly was subject to an adverse employment action, the disparate treatment claim fails as a matter of law.

---

[4] Kelly contends in her response that she "felt completely humiliated" by the transfer to D.C. and that a coworker advised her to "bring a gun with you" to work. ECF No. 18 at 18. Another asked "Are you in some kind of trouble?" *Id.* Kelly further complains that she "did not feel safe driving to work" and that she will "never feel the same about African Americans again." *Id.* Putting to the side the inherent tension in Plaintiff resting her claims of discrimination on her own stereotypic views of African Americans, Kelly's subjective feelings do not transform the transfer into an adverse employment action. *See, e.g.*, *Gordon v. Gutierrez*, No. 06-861, 2007 WL 30324, at *8 (E.D. Va. Jan. 4, 2007) ("Plaintiff's subjective dissatisfaction with her work assignments is not actionable when it produced no detrimental effect on the terms or conditions of her employment."), *aff'd*, 250 F. App'x 561 (4th Cir. 2007); *Toulan v. DAP Prods., Inc.*, No. CCB-05-2254, 2007 WL 172522, at *5 (D. Md. Jan. 17, 2007) ("subjective discomfort" insufficient without "tangible consequence to any aspect of [plaintiff's] career"), *aff'd sub nom. Toulan v. DAP, Inc.*, 271 F. App'x 312 (4th Cir. 2008).

## 2. Hostile Work Environment

To state a hostile work environment claim, a plaintiff must aver facts from which this Court could infer plausibly that plaintiff experienced (1) unwelcome acts; (2) based on a protected characteristic; (3) that were sufficiently severe or pervasive to alter the conditions of employment and to create an abusive work environment; and (4) are imputable to the employer. *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015). Even if a plaintiff does not plead single acts that are "cognizable as adverse actions on their own," this conduct "may, over time, cumulatively amount to an unlawful employment practice where they create a hostile work environment." *Cobb*, 2015 WL 3654562, at *8.

In support of this claim, the Complaint describes that George "screamed" at Kelly "in front of everyone" after she confronted him about the shift changes in May 2012. The Complaint also describes that about a year later, George "yelled at three women and [Kelly], 'God it just goes in one ear and right out the other.'" ECF No. 1 at 9. On a separate occasion, George "threw trash cans around [her] in an aggressive manner." *Id.* George also is said, generally, to have criticized Kelly's work performance and issued work-related disciplinary warnings. *Id.*

Giant principally argues that George's conduct, taken together, is not "sufficiently severe or pervasive" to state a hostile work environment claim. In assessing the sufficiency of this claim, the Court considers the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 299 (4th Cir. 2015). This prong is met "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

13

alter the conditions of the victim's employment and create an abusive work environment." *Id.* at 298 (citation omitted). In contrast, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (citation omitted).

Viewing the facts most favorably to Kelly, she has described a handful of harsh and unpleasant incidents, but these events together do not amount to a workplace permeated with hostility and harassment. *See Vincent v. MedStar S. Md. Hosp. Ctr.*, No. TDC-16-1438, 2017 WL 3668756, at *9–10 (D. Md. Aug. 22, 2017) (finding no hostile work environment where supervisor yelled at employee, called her "stupid," refused to communicate with her, and harassed her almost daily); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (describing one encounter where a supervisor "yelled at Plaintiff, told her she was incompetent, pushed her down in her chair, and blocked the door to prevent Plaintiff from leaving while he continued to yell at her"). At best, the Complaint details two incidents of George's yelling, which occurred a year apart, and a third instance where he threw trash cans "around" Kelly. Moreover, the Court cannot plausibly infer that George's criticism of Kelly's work supports a hostile work environment. Indeed, employers are permitted to criticize the work of their employees. That Kelly was criticized for her work, without more, does not support her hostile work environment claim. *See Myers v. Md. Auto. Ins. Fund*, No. CCB-09-3391, 2010 WL 3120070, at *6 (D. Md. Aug. 9, 2010) (insufficient that "instances of negative feedback may have been offensive to [plaintiff]" as "criticism is usually unwelcome"). The claim fails as a matter of law.

### 3. Retaliation

The Complaint lastly alleges that Kelly "was retaliated against when [she] was transferred to a D.C. store out of [her] district despite having more seniority than Victor Herrera." ECF No. 1 at 10. Title VII's anti-retaliation provision prohibits an employer from taking adverse action against an employee because she has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59–60 (2006). To sustain a retaliation claim, a plaintiff must show that she (1) engaged in protected activity; (2) was subject to an adverse employment action; and (3) that a causal link exists between the two. *Coleman*, 626 F.3d at 190.

Giant does not dispute that Kelly engaged in protected activity in April and May 2013 through reporting George's conduct to her union representative, sending a letter to Giant alleging "discrimination on the basis of sex," and formally filing a charge with the EEOC asserting both race and sex-based discrimination. *See* ECF No. 1 at 9–10; ECF No. 14-2 at 2. Rather, Giant contends that the Complaint fails to allege Kelly suffered any adverse employment action.

Relevant to the analysis, the Court notes that an "adverse action" to support a retaliation claim is construed more broadly than those sufficient to support a discrimination claim. *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018). For retaliation claims, the adverse action "need not 'affect the terms and conditions of employment;'" the acts will be considered sufficiently adverse if they "'might have dissuaded a reasonable worker' from engaging in protected activity." *Id.* (quoting *Burlington*, 548 U.S. at 64, 68).

Even adopting the more liberal definition of adverse action, and assuming that the transfer suffices, Kelly's claim nonetheless fails on the element of causation. Importantly, the

Complaint must do more than "conclusorily assert the existence of a 'causal connection.'" *Lee v. Safeway, Inc.*, No. RDB-13-3476, 2014 WL 4926183, at *11 (D. Md. Sept. 30, 2014). While "the presence of a 'close' temporal relationship between the protected activity and the alleged adverse action can be sufficient to establish a causal connection at the pleading stage," the employer must know the employee engaged in protected activity. *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 249 (D. Md. 2016).

Nothing in the Complaint allows the Court to infer that McDaniels, who ordered Kelly's transfer, knew that Kelly engaged in protected activity. ECF No. 1 at 9–10. The claim thus fails on this basis alone. *See Bowman*, 173 F. Supp. 3d at 249. However, even if the Court infers knowledge of Kelly's protected activities due to her letter to "Giant food LLC Headquarters," (ECF No. 1 at 9), the allegedly retaliatory transfer took place roughly *nine months* after Kelly sent the letter. *Id.* at 10. While no "bright-line rule" dictates the temporal proximity necessary to establish causation, the United States Court of Appeals for the Fourth Circuit has found gaps of two to four months "too long to establish a causal connection by temporal proximity alone." *Bishop v. Bd. of Educ. of Calvert Cty.*, No. DKC 11-1100, 2011 WL 2651246, at *8 (D. Md. July 5, 2011), *aff'd sub nom. Bishop v. Bd. of Educ. for Calvert Cty. Pub. Sch.*, 466 F. App'x 261 (4th Cir. 2012); *see also Allen v. Discovery Commc'ns, LLC*, No. PWG-15-1817, 2016 WL 4364224, at *5 (D. Md. Aug. 16, 2016) (citing Fourth Circuit cases rejecting gaps of as little as two months). In this respect, the nine-month lapse between her protected activities and transfer (the sole retaliatory act), simply does not permit the Court to infer plausibly a causal connection between the two. Accordingly, the Court dismisses Kelly's retaliation claim.

IV. **Motion for Leave to File Surreply**

On December 28, 2018, Kelly moved for leave of court to "amend[] [her] response to

16

Defendant's reply." ECF No. 21 at 1. The Court construes this motion as one for leave to file a surreply. Surreply memoranda are disfavored in this District. *See Hensley v. Oketunji*, No. DKC-18-1170, 2019 WL 918407, at *1 n.2 (D. Md. Feb. 25, 2019); Loc. R. 105.2.a ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). The Court may grant leave to file a surreply "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Hensley,* 2019 WL 918407, at *1 n.2 (quoting *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 861 (D. Md. 2009)). The Court has reviewed Kelly's proposed submission and it does not change the Court's analysis. Thus, the motion is denied as moot.

## V. Dismissal with Prejudice

Whether to dismiss claims with or without prejudice remains within the discretion of the district court. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (citation omitted). Generally, the plaintiff should be afforded the opportunity to amend or dismissal should be without prejudice. *See Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013) ("Where no opportunity is given to amend the complaint, the dismissal should generally be without prejudice."). However, dismissal with prejudice may be warranted where "it is clear that amendment would be futile." *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008); *see also In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 391 (4th Cir. 2005) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

While Kelly's inclusion of new factual support in her Opposition and attempted Surreply was improper, the Court assumes that the facts included in those pleadings would similarly be averred in any amended complaint. Accordingly, the Court takes those facts into consideration in deciding whether potential amendment would be futile.

The Court first notes that the lion's share of the additional facts concern incidents involving other employees, not Kelly, or otherwise would be dismissed for failure to exhaust. *See* ECF No. 18 at 13, 15 (referencing George's conduct toward other Caucasian female employees); *id.* at 18, 22 (detailing several more post-transfer incidents between 2014 and 2015). As to the facts not barred by exhaustion, Kelly avers George once said, "A brain is a terrible thing to waste" while walking by Kelly. *Id.* at 13. On another occasion, George "singled [Kelly] out" for "fail[ing] the health inspection," while not holding another male employee responsible. *Id.* at 15.

When considered alongside the factual averments in the Complaint, these additional events, while disquieting, do not constitute adverse action for purposes of Kelly's disparate treatment claim nor rise to the level of severe or pervasive conduct with respect to the hostile work environment claims. Accordingly, the Court finds any amendment to the Complaint would likely be futile and dismissal with prejudice is proper.

## VI. Conclusion

For the foregoing reasons, the Court GRANTS Defendant Giant's Motion to Dismiss (ECF No. 14) with prejudice. The Court DENIES Plaintiff Kelly's Motion for Appointment of Counsel (ECF No. 11) and Motion for Leave to File a Surreply (ECF No. 21). A separate Order follows.

 6/17/2019  	/S/
Date	Paula Xinis
	United States District Judge